IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**PATRICE BRAXTON**                                                                                    **PLAINTIFF**

**v.**                                                        CASE NO.: 3:22-cv-359-DPJ-FKB

**KLLM TRANSPORT SERVICES, LLC**                                            **DEFENDANT**

**COMPLAINT**
**JURY TRIAL DEMANDED**

**COMES NOW** the Plaintiff, Patrice Braxton, by and through counsel, Watson & Norris, PLLC, and files this action to recover damages for violations of her rights under the Americans with Disabilities Act (ADA), against the Defendant KLLM Transport Services, LLC. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

**THE PARTIES**

1.  Plaintiff, Patrice Braxton, is an adult female citizen residing in Warren County, Mississippi.

2.  Defendant, KLLM Transport Services, LLC, is a Texas limited liability corporation licensed to do business in the state of Mississippi that may be served with process by serving its registered agent: C T Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

**JURISDICTION AND VENUE**

3.  This Court has federal question jurisdiction for actions that arise under Title VII.

4.  This Court has personal and subject matter jurisdiction over the Defendant and venue is proper in this Court.

1

5. Plaintiff timely filed a Charge of Discrimination with the EEOC for Disability Discrimination and Retaliation on October 20, 2020, a true and correct copy of which is attached as Exhibit "A." The EEOC issued a Notice of Right to Sue on March 31, 2022, a true and correct copy of which is attached as Exhibit "B." Plaintiff timely files this cause of action within ninety (90) days of receipt of her Notice of Right to Sue.

## STATEMENT OF FACTS

6. Plaintiff is a 34-year-old female resident of Warren County, Mississippi.

7. Plaintiff was hired on June 8, 2020, as a Truck Driver at KLLM Transport Services, LLC.

8. Plaintiff takes a medication, Desmopressin, in the treatment of a chronic medical condition.

9. Plaintiff was prescribed this medication by Endocrinologist Vishnu Garla at the University of Mississippi Medical Center.

10. Desmopressin tends to suppress urine output.

11. When Plaintiff was hired, Plaintiff reported to KLLM about her chronic medical condition and the medication (i.e., desmopressin) she takes to treat it.

12. On or around August 18, 2020, KLLM selected Plaintiff to undergo a random drug test.

13. Plaintiff attempted to comply but was unable to produce sufficient urine for the test after four attempts within three hours.

14. Plaintiff explained to those collecting the urine sample for the drug test about her medication (i.e., desmopressin) and its tendency to suppress urine output.

15. Since she could not produce sufficient urine for the test, Plaintiff was

instructed to report to Safety Director Booth Veazey.

16. On August 18, 2020, Mr. Veazey instructed Plaintiff to obtain a letter from her doctor explaining how the desmopressin was interfering with her ability to provide sufficient urine for the drug test.

17. On August 19, 2020, at Plaintiff's request, Dr. Garla wrote a letter to KLLM explaining how the medication desmopressin interfered with Plaintiff's ability to produce sufficient urine for the drug test.

18. Plaintiff delivered this letter from Dr. Garla to Mr. Veazey.

19. On August 19, 2020, Mr. Veazey told Plaintiff that she would need to undergo a Shy Bladder Exam.

20. Mr. Veazey told Plaintiff that the Medical Review Office would find a medical provider to perform the exam and schedule the appointment for Plaintiff.

21. A week later, however, Mr. Veazey told Plaintiff that the Medical Review Office was unsuccessful in locating a medical provider in the area to perform the exam.

22. Mr. Veazey instructed Plaintiff to find a doctor who would perform the exam and set an appointment.

23. When Plaintiff reached out to schedule an appointment for a Shy Bladder Exam, however, she was unable to schedule an appointment (with a local urologist) before February 2021.

24. Plaintiff sought out urologists within a 100-mile radius and the earliest appointment she could obtain was not until October 2020.

25. Moreover, Plaintiff was told that the urologist would need to conduct a screening evaluation prior to performing the exam.

26. Plaintiff reported this information back to Mr. Veazey and the Medical Review Office.

27. On or around September 10, 2020, Plaintiff provided another letter to the Medical Review Office from Dr. Garla. This letter stated, "[Desmopressin] may have an effect on [Plaintiff's] urine concentration and specific gravity. The Shy Bladder Exam is not a test that I perform as an endocrinologist. I am unable to address this issue."

28. On or around September 14, 2020, Donna LNU, an Assistant to Medical Review Office Occupational Medicine Specialist Dr. Michael Suls, telephoned Plaintiff.

29. Ms. Donna told Plaintiff that she had spoken with Dr. Garla's nurse, Lorraine LNU.

30. Ms. Donna stated that Ms. Lorraine had agreed that Dr. Garla's office would perform the Shy Bladder Exam on Plaintiff and complete the required follow up documentation.

31. On September 16, 2020, Plaintiff received an email stating that Dr. Suls had registered Plaintiff as having refused to take the urine drug test.

32. On that same date, Mr. Veazy telephoned Plaintiff and notified her that she was terminated, allegedly due to refusing to be drug tested.

33. Plaintiff then called Dr. Garla's office. Ms. Lorraine stated to Plaintiff that, when contacted by the Medical Review Office, Dr. Garla's office had responded that a Shy Bladder Exam did not fall within the scope of Dr. Garla's medical practice, he was not able to perform that exam, and he was unable to assist with that issue.

34. Moreover, Dr. Garla's office adamantly denied having stated to the Medical Review Office that they (Dr. Garla's office) would perform the Shy Bladder Exam and provide follow up documentation.

35. Plaintiff then contacted the Medical Review Office again and reported what she had been told from Dr. Garla's office.

36. On or about September 16, 2020, Dr. Suls informed Plaintiff that she had 60 days to obtain a Shy Bladder Exam and follow up documentation.

37. Plaintiff was told that if she was able to obtain a Shy Bladder Exam and follow up documentation that she would be eligible for rehire.

38. On or about October 6, 2020, Plaintiff underwent a Shy Bladder Exam at the office of Urologist Dr. Stephen J. Lieman at the North Dallas Urology Clinic in Plano, Texas.

39. The results of Dr. Lieman's Shy Bladder Exam conclusively substantiated the premise that desmopressin likely contributed to Plaintiff being unable to produce sufficient urine for the random drug test.

40. On October 6, 2020, Plaintiff emailed to KLLM the results and conclusions related to the Shy Bladder Exam performed by Dr. Lieman on Plaintiff.

41. Plaintiff repeatedly reached out to KLLM to address the results of her Shy Bladder Exam; however, KLLM refused to respond to her.

42. Subsequently, on October 20, 2020, Plaintiff filed an EEOC Charge of Disability Discrimination.

43. On November 10, 2020, KLLM responded to Plaintiff's Charge with a Position Statement.

44. KLLM's Position Statement alleged that on September 16, 2020 Plaintiff was notified she had 60 days to obtain a Shy Bladder Exam.

45. After that the Statement alleges "Braxton has not contacted KLLM to seek rehire."  Plaintiff contends this statement is false.

46. As the EEOC's Determination states, "Those results were faxed to the [Medical Review Office] on or about October 6, 2020 by the performing physician who concluded the Charging Party did, in fact, have a medical condition that has, or with a high degree of probability could have, precluded her from providing a sufficient amount of urine during random testing.

47. Thereafter [KLLM and/or the Medical Review Office] did not contact [Plaintiff] or attempt to provide [Plaintiff] with a reasonable accommodation to continue her employment."

48. KLLM's Position Statement attempts to distance itself from the Medical Review Office or Medical Review Officer, noting that person and/or entity is independent.

49. Yet, the EEOC Determination states that the Medical Review Officer is KLLM's "representative".

50. Moreover, while the Medical Review Office or Officer may have a duty to act independently in its or his/her decision making, that entity/person is still the representative of KLLM and failed in its responsibility to respond and reasonably accommodate Plaintiff.

## CAUSES OF ACTION

### COUNT I:  VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)

51. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 50 above as if fully incorporated herein.

52. The Defendant violated the ADA by terminating Plaintiff because her disability and/or perceived disability.  Specifically, after Dr. Lieman's results of Plaintiff's Shy Bladder Exam conclusively substantiated the premise that desmopressin likely contributed to Plaintiff being unable to produce sufficient urine for the random drug test.

53. The unlawful actions of the Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff. As such, Plaintiff is entitled to recover compensatory and punitive damages.

54. Plaintiff has been harmed as a result of this retaliation, and the Defendant is liable to Plaintiff for the same.

55. The actions of the Defendant are in violation of the Americans with Disabilities Act of 1990 and the Family Medical Leave Act of 1993.

## PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1. Back pay;
2. Reinstatement or front pay in lieu of reinstatement;
3. Lost benefits;
4. Liquidated damages;
5. Compensatory damages;
6. Punitive damages;
7. Pre-judgment and post-judgment interest;
8. A tax gross-up and all make whole relief;

9. Attorney's fees;
10. Costs and expenses; and

THIS the 27th day of June 2022.

Respectfully submitted,

PATRICE BAXTON, PLAINTIFF

By: /s/Louis H. Watson, Jr.
Louis H. Watson, Jr.  (MB# 9053)
Nick Norris (MB# 101574)
Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
4209 Lakeland Drive # 365
Flowood, MS 39232-9212
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
Email: louis@watsonnorris.com.com
Web:  www.watsonnorris.com