UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

PATRICE BRAXTON                                                                                          PLAINTIFF

V.                                                                         CIVIL ACTION NO. 3:22-CV-359-DPJ-FKB

KLLM TRANSPORT SERVICES, LLC                                                                     DEFENDANT

ORDER

Plaintiff Patrice Braxton says her former employer, KLLM Transport Services, LLC, violated her rights under the Americans with Disabilities Act (ADA) when it terminated her employment following an incomplete drug screen. KLLM seeks summary judgment, but the Court finds that its motion should be denied.

I.      Facts and Procedural History

On June 8, 2020, KLLM hired Braxton as a truck driver. Braxton takes Desmopressin for diabetes insipidus; this medication "tends to suppress urine output." Compl. [1] at 2. On August 18, 2020, KLLM selected Braxton for random drug screening, but she could not produce enough urine to run a valid test. When that happens, it triggers Department of Transportation regulations applicable to commercial motor carriers like KLLM. *See* 40 C.F.R. § 40.193. These procedures are referred to as the Shy Bladder Regulations. *Id.*

Based on those regulations, KLLM claims that it was required to terminate Braxton's employment, and it did so on September 16, 2020. But when Braxton attempted to provide additional information showing the medical reason for her incomplete urine test, KLLM allegedly refused to consider it. Braxton therefore filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that KLLM violated the ADA. EEOC Charge [1-1].

On March 2, 2022, the EEOC issued its Determination, concluding "there is reasonable cause to believe that Charging Party was denied a reasonable accommodation and discharged because of her disabilities in violation of the Americans with Disabilities Act." EEOC Determination [23-5] at 2. When "efforts to conciliate" the charge failed, the EEOC issued Braxton a Notice of Right to Sue. Notice [1-2] at 1. Braxton then filed this lawsuit.

KLLM now moves for summary judgment, arguing that it properly terminated Braxton's employment under DOT's Shy Bladder Regulations and that those regulations preclude her ADA claim. Braxton opposes the motion, and it has been fully briefed. The Court has both personal and subject-matter jurisdiction to consider KLLM's request.

II.     Summary Judgment Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case[] and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . .

both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  It must "interpret all facts and draw all reasonable inferences in favor of the nonmovant." *EEOC v. Rite Way Serv.*, 819 F.3d 235, 239 (5th Cir. 2016); *accord Tolan v. Cotton*, 572 U.S. 650, 660 (2014).  But conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)); *accord Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

III.   Analysis

In its motion, KLLM asserts that the Shy Bladder Regulations offer a "complete defense" to Braxton's ADA claim.  Mem. [20] at 7.  But to make that argument, KLLM characterizes Braxton's suit as a wrongful-termination claim premised on the termination of her employment in September 2020.  As discussed below, there is more to the story.

The Shy Bladder Regulations are triggered when a commercial-motor-vehicle driver cannot provide an adequate urine sample for a drug test.  When this occurs, the driver must "obtain, within five days, an evaluation from a licensed physician, acceptable to the [medical review officer, or] MRO, who has expertise in the medical issues raised by the employee's failure to provide a sufficient specimen."  49 C.F.R. § 40.193(c).  The MRO acts "as an independent and impartial 'gatekeeper' and advocate for the accuracy and integrity of the drug testing process."  *Id.* § 40.123(a).

Under the regulations, the referral physician must make one of two recommendations; the MRO may then accept or reject the recommendation:

> As the referral physician conducting this evaluation, you must recommend that the MRO make one of the following determinations:
> (1) A medical condition has, or with a high degree of probability could have, precluded the employee from providing a sufficient amount of urine. As the MRO, if you accept this recommendation, you must:
> (i) Check "Test Cancelled" (Step 6) on the CCF; and
> (ii) Sign and date the CCF.
> (2) There is not an adequate basis for determining that a medical condition has, or with a high degree of probability could have, precluded the employee from providing a sufficient amount of urine. As the MRO, if you accept this recommendation, you must:
> (i) Check the "Refusal to Test" box and "Other" box in Step 6 on Copy 2 of the CCF and note the reason next to the "Other" box and on the "Remarks" lines, as needed.
> (ii) Sign and date the CCF.

*Id.* § 40.193(d).

Here, Braxton submitted an August 2020 letter from her endocrinologist, Dr. Garla, stating that she "is required to use the medication desmopressin" and "[i]t may have an effect on her urine concentration and specific gravity." Garla Letters [23-2] at 1. But KLLM concluded that the letter was insufficient and told Braxton that a Shy Bladder Exam was required. Pl.'s Aff. [23-1] at 2.

Neither KLLM nor Braxton could find a doctor to administer the exam, so Braxton provided a second letter from Dr. Garla. He stated:

> Related to her health issue, Patrice Braxton is required to use the medication desmopressin (DDAVP) on a daily basis.
>
> It may have an effect on her urine concentration and specific gravity.
>
> The Shy Bladder Exam is not a test that I perform as an endocrinologist. I am unable to address this issue.

Garla Letters [23-2] at 2.  Like the first letter, the second omitted § 40.193(d)'s mandatory language.  The MRO, Dr. Suls, therefore submitted a form indicating "Refusal to Test."  MRO Report [19-3] at 1.  Based on that finding, KLLM terminated Braxton's employment.

KLLM insists that because the MRO found a "Refusal to Test," termination was "authorized, if not required" under the Shy Bladder Regulations.  Def.'s Mem. [20] at 7 (citing 49 C.F.R. §§ 40.297(a), 655.61(a)(3)).  That may be correct, but the Shy Bladder Regulations include other requirements that Dr. Suls noted in the Comments to his MRO report:

> Verified Test Result:  **Refusal to Test- Other**    Substance(s):
>
> Comments: Refusal to Test: donor failed to provide specimen within 3-hour time limit. Medical information from specialist reviewed. No medical explanation found. Pursuant to regulation, donor has up to sixty (60) days to provide any further medical information for MRO review.

MRO Report [19-3] at 1.  That comment tracks what Dr. Suls allegedly told Braxton after the termination decision.  Pl.'s Aff. [23-1] at 4.  It also tracks 49 C.F.R. § 40.133(d):

> As the MRO, after you have verified a test result under this section and reported the result to the DER, you must allow the employee to present information to you within 60 days of the verification to document that serious illness, injury, or other circumstances unavoidably precluded contact with the MRO and/or DER in the times provided.  On the basis of such information, you may reopen the verification, allowing the employee to present information concerning whether there is a legitimate medical explanation of the confirmed test result.

Based on Dr. Suls's representations, Braxton underwent a Shy Bladder Exam on October 6, 2020—within the 60-day window.  The examining physician, Dr. Stephen J. Lieman, completed the required form, including the language required by the Shy Bladder Regulations:

5



Lieman Report [23-3] at 4.  Dr. Lieman also confirmed that Braxton suffers from diabetes insipidus.  *Id.*

Braxton emailed those results to KLLM and repeatedly "reached out" to the company to address them.  Pl.'s Aff. [23-1] at 4.  KLLM never responded, *id.*, and claimed in its EEOC response that "it is unknown . . . whether [Braxton] underwent the 'Shy Bladder' evaluation required by the MRO," KLLM EEOC Resp. [23-4] at 2.

KLLM argues that Dr. Lieman's report is immaterial because the Shy Bladder Regulations are a "complete defense" to the termination claim—full stop.  Def.'s Mem. [20] at 7.  But to get there, KLLM frames Braxton's suit as asserting only a wrongful-termination claim based on the termination of her employment in September 2020.  As it puts the theory, "Plaintiff's Complaint against KLLM only alleges wrongful termination [in September 2020], not wrongful re-hire [in October 2020]."  Def.'s Reply [25] at 3.  KLLM also says Braxton "concedes in her Complaint that [her alleged] condition was only 'conclusively' known by KLLM after her employment had already been terminated" in September 2020.  Def.'s Mem. [20] at 12.  Thus, "KLLM could not have wrongfully terminated the Plaintiff when it did not have knowledge of the Plaintiff's disability" when it fired her.  Def.'s Reply [25] at 3 n.5.

But that's not how Braxton pleaded her claim.  Braxton offers one cause of action in her Complaint—that KLLM "violated the ADA by terminating Plaintiff because of her disability

6

and/or perceived disability." Compl. [1] ¶ 52.  In her next sentence, she explains that the discrimination "[s]pecifically" occurred "*after* Dr. Lieman's results of Plaintiff's Shy Bladder Exam conclusively substantiated the premise that desmopressin likely contributed to Plaintiff being unable to produce sufficient urine for the random drug test." *Id.* (emphasis added).  She also states in her incorporated facts that KLLM refused to consider Dr. Lieman's Shy Bladder Exam even though she was given 60 days to obtain one (and did). *Id.* ¶¶ 40-41.

Braxton's use of the word "termination" rather than "re-hire" in her Complaint may have been imprecise, but she plainly challenges KLLM's acts "after" Dr. Lieman's report rather than those related to the initial decision to terminate her employment in September 2020. *Id.* ¶ 52. And that is the same theory the EEOC investigated and then addressed when concluding that KLLM may not have "attempt[ed] to provide [Braxton] with a reasonable accommodation to continue her employment."  EEOC Determination [23-5] at 2.

Considering KLLM's acts after Dr. Lieman's report distinguishes KLLM's primary authority for finding that the Shy Bladder Regulations offer a "complete defense" to Braxton's ADA claim.  Def.'s Mem. [20] at 7.  KLLM acknowledges that no Fifth Circuit opinion considers this defense, so it relies on two out-of-circuit district-court cases—*Jones v. Con-Way Freight, Inc.*, No. 3:12-CV-724-GCM, 2014 WL 1120062 (W.D.N.C. Mar. 20, 2014) and *Melman v. Metropolitan Government of Nashville*, No. 3:08-CV-01205, 2010 WL 3063805 (M.D. Tenn. Aug. 3, 2010).  But neither involved an employer refusing to consider a Shy Bladder Exam submitted within the 60 days § 40.133(d) allows.

KLLM does make a few additional arguments.  First, it contends that Dr. Lieman's report fails to satisfy § 40.193(d)(1)'s requirements because he states on page 2 that Braxton's diabetes insipidus and use of Desmopressin "*may* hamper a spot urine check."  Def.'s Mem. [20] at 11

7

(quoting Lieman Report [23-3] at 2 (emphasis added by KLLM)).  But on page 4 of his report, Dr. Lieman checked the box with § 40.193(d)(1)'s exact language.  *See* Lieman Report [23-3] at 4; *see also* 49 C.F.R. § 40.193(d)(1).  Thus, a fact question exists whether Dr. Lieman's report satisfied § 40.193(d)(1).  Regardless, Braxton's theory is that KLLM violated the ADA by refusing to consider that report.  Compl. [1] ¶ 52.

KLLM also submits that the MRO retains discretion to accept or reject the physician's recommendation under the regulations.  Maybe so, but that assumes the MRO considered the recommendation.  Braxton claims that KLLM refused to do so and therefore violated her ADA rights.

Finally, KLLM argues in reply that even assuming Braxton had pursued a rehire claim, DOT regulations would preclude it.  Def.'s Reply [25] at 3 n.5.  But the regulations KLLM cites do not appear to address Braxton's claim that KLLM violated the ADA by refusing to consider Dr. Lieman's report.  *See, e.g.*, 49 C.F.R. § 40.305(b) (providing that commercial motor carriers "are not required to return an employee to safety-sensitive duties because the employee has met [certain regulatory] conditions.  That is a personnel decision that you have the discretion to make, subject to . . . other legal requirements").  Before addressing whether this and other cited regulations are applicable to the ADA claim, the Court would need to hear from Braxton, which is why "[i]t is the practice of . . . the district courts to refuse to consider arguments raised for the first time in reply briefs."  *Gillaspy v. Dall. Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008).

In sum, KLLM relies on the Shy Bladder Regulations to support its motion.  Those arguments *may* have merit as to the September 2020 decision to fire Braxton, but they do not

8

address the claim she pleaded. Nor has KLLM offered other legally sufficient reasons to dismiss Braxton's pleaded ADA claim.[1]

IV. Conclusion

The Court has reviewed all arguments raised by the parties; those not specifically addressed would not change the result. KLLM's motion for summary judgment [19] is denied. The stay of discovery, imposed January 3, 2023, is lifted; the parties are directed to contact the chambers of United States Magistrate Judge F. Keith Ball to set the case for a status conference.[2]

**SO ORDERED AND ADJUDGED** this the 17th day of July, 2023.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

---

[1] The Court has considered KLLM's motion based on the claim in Braxton's Complaint. But Braxton offers alternative theories in her response to KLLM's summary-judgment motion related to pre-termination events. For example, she contends that KLLM could have performed an alternative test—like a blood test—after the urine test was unsuccessful. Pl.'s Resp. [24] at 7. It is unclear whether Braxton could establish an ADA claim based on decisions before Dr. Lieman's report. Regardless, she never pleaded those theories and has not moved for leave to amend.

[2] In light of that stay, the upcoming pretrial and trial settings are terminated. New deadlines can be set by Judge Ball following the status conference.